**John J. DOMINGUEZ, M.D., Appellant,**

v.

**Don A. GILBERT, Commissioner, and Sharon Thompson, Director, Medicaid Fraud Unit, Texas Health and Human Services Commission, Appellees.**

No. 03–00–00770–CV.

Court of Appeals of Texas, Austin.

May 17, 2001.

Lewis K. Harley, Harley & Price, PLLC, Houston, for appellant.

Courtney Duperier Newton, Assistant Attorney General, Austin, for appellees.

Before Justices KIDD, B.A. SMITH and PURYEAR.

KIDD, Justice.

John J. Dominguez brought suit against Don A. Gilbert, Commissioner of the Texas Health and Human Services Commission ("the Department"), and Sharon Thompson, Director of Medicaid Program Integrity, Office of Investigations and Enforcement ("Medicaid Enforcement"), seeking a writ of mandamus to compel the release of documents requested pursuant to the Texas Public Information Act. *See* Tex. Gov't Code Ann. §§ 552.001–.353 (West 1994 & Supp.2001) ("the Act").[1]  Prior to a hear-

---

**1.** The 76th Legislature made a number of changes to the Texas Public Information Act. Tex. Gov't Code Ann. §§ 552.001–.353 (West 1994 & Supp.2001).  Because Dominguez made his request prior to the September 1, 1999 effective date of the amendments, the

ing before the trial court, the Department produced some of the requested documents but refused to produce others, asserting that they were confidential as a matter of law and therefore expressly excepted from disclosure under the Act. Following a hearing and an *in camera* inspection of the withheld documents, the trial court issued an order denying Dominguez's petition for writ of mandamus.[2] We will reverse the order and remand the cause to the trial court.

## BACKGROUND

In January 1998, Medicaid Enforcement began investigating Dominguez, a practicing physician, for possible Medicaid fraud. In the course of the investigation, Medicaid Enforcement obtained Dominguez's actual files, or copies thereof, regarding his treatment of over 700 patients. As a result of Medicaid Enforcement's investigation, it sent Dominguez an administrative sanctions letter. Following receipt of the letter, Dominguez made a request pursuant to the Act for a complete copy of Medicaid Enforcement's investigative file and any other documents relating to the allegations against him.

Dominguez made his request in July 1999. Thereafter, Dominguez and the Department engaged in settlement negotiations; however, the Department took no action regarding Dominguez's request. On May 5, 2000, Dominguez filed a petition for writ of mandamus requesting that the trial court compel the Department to produce all information related to the investigation for his inspection and duplication. On May 24, the Department sent Domin-

guez 400 pages that were responsive to his request; however, the Department withheld or redacted about 100 pages, which it maintained were confidential by law and could not be produced. In response to Dominguez's petition in the trial court, the Department filed an answer, asserting that the production of all documents not excepted from disclosure under the Act rendered the cause moot.

The trial court conducted a hearing at which both parties presented argument and Dominguez called one witness. Thereafter, the trial court conducted an *in camera* inspection of the withheld documents and issued an order denying Dominguez's petition for writ of mandamus. Dominguez requested findings of fact and conclusions of law, which appear in the record.

Because Dominguez has not seen the disputed documents, he cannot be certain of their contents. He asserts that the 400 pages in his possession, however, contain references that indicate that there are other documents that should have been produced. Dominguez claims that these withheld documents are not confidential as a matter of law because they contain information about his treatment of his patients, for whom he is the primary-care physician. He also alleges that the documents contain notes made by a physician who reviewed his records on behalf of Medicaid Enforcement. Specifically, he maintains that the reviewing physician annotated the patient files, evaluating the medical necessity of Dominguez's treatment. According to Dominguez, this physician's determination of "no medical necessity" forms the basis

---

prior version of the Act controls this case. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 354 n. 1 (Tex.2000). We will cite to the current code only for those sections that were unaffected by the 1999 amendments.

2. Dominguez's petition also sought declaratory judgment. In response, the Department filed a plea to the jurisdiction, which was granted in a second order. Dominguez also appeals that order, which will be addressed in due course.

of the Department's punitive and costly sanctions against him. Finally, Dominguez argues that the Department must disclose the documents because it failed to follow the procedural requirements set forth in the Act for requesting a determination from the Attorney General.

The Department asserts that the documents contain confidential information relating to Medicaid coverage and treatment of Dominguez's patients by other physicians, as well as Dominguez. The Department argues that federal and state law prohibit the disclosure of such information regarding Medicaid recipients. While the Department concedes that the documents do contain some information regarding Dominguez's treatment of his patients, it denies that the documents contain notes or other work product. Finally, the Department contends that it delayed taking action on Dominguez's written request because the parties were participating in settlement negotiations.

## DISCUSSION

### The Texas Public Information Act

■ It is the policy of the State of Texas that each person is entitled to have "complete information about the affairs of government and the official acts of public officials and employees." Tex. Gov't Code Ann. § 552.001(a) (West 1994). The primary purpose of the Act is to grant the people access to information "so that they may retain control over the instruments they have created." *Id.* "To that end, the provisions of the Act are to be liberally construed in favor of the disclosure of government-held information." *Hancock v. State Bd. of Ins.*, 797 S.W.2d 379, 381 (Tex.App.—Austin 1990, no writ); *accord* Tex. Gov't Code Ann. § 552.001(b) (West 1994). The Act defines public information as "information that is collected, assembled, or maintained under a law or ordi-

nance or in connection with the transaction of official business" by or for a governmental body. Tex. Gov't Code Ann. § 552.002(a) (West Supp.2001).

Upon receipt of a request from any person, the officer for public information of a governmental body is required to *promptly* produce public documents for inspection, duplication, or both. *Id.* § 552.221(a). If the information is unavailable at the time of the request, or cannot be produced within ten business days, the officer is required to notify the requestor in writing and set a date for production within a reasonable time. *Id.* § 552.221(c), (d).

Although the Act favors disclosure, it also contains exceptions from disclosure for over twenty categories of information. *See id.* §§ 552.101–.132 (West 1994 & Supp.2001). For example, an exception prohibits disclosure of "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." *Id.* § 552.101 (West 1994). If a governmental body wants to withhold information, the Act requires it to request a decision from the Attorney General about whether an exception can be claimed, unless a previous determination has already addressed the exception's applicability to the specific type of information at issue. Act of June 1, 1997, 75th Leg., R.S., ch. 1231, § 5, 1997 Tex. Gen. Laws 4701, 4701 (amended 1999) (current version at Tex. Gov't Code Ann. § 552.301(a) (West Supp. 2001)). If the governmental body is seeking an Attorney General's determination, it must do so in writing within ten business days of receiving the request. *Id.* (current version at Tex. Gov't Code Ann. § 552.301(b) (West Supp.2001)). The Act does not require notice to the requestor that such a determination is being sought. *See id.* (current version at Tex. Gov't Code

Ann. § 552.301(d) (West Supp.2001)).[3] The Act is also silent as to the course of action an agency must take when relying on a previous determination that the information is excepted from disclosure. *See id.* There is no statutory requirement that the governmental body give notice to the requestor that it is withholding information in reliance on an earlier determination. *See id.* The failure to seek an Attorney General's determination *when one is required* creates a presumption that the information is "public information." Act of April 30,1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 605 (amended 1999) (current version at Tex. Gov't Code Ann. § 552.302 (West Supp.2001)).

### The Petition for Writ of Mandamus

█ Dominguez argues that because the Department did not timely respond to his application or request an Attorney General's determination regarding whether the information was within an exception to the Act, there is a presumption that the information is public. *See id.* However, the Department is not required to request a determination when one has already been issued regarding the exception's applicability to the specific type of information being sought. Act of June 1, 1997, 75th Leg., R.S., ch. 1231, § 5, 1997 Tex. Gen. Laws 4701, 4701 (amended 1999). In this case, the Attorney General's open records decision number 584 appears to be on point, and the Department is entitled to rely on it. *See* Tex. Att'y Gen. ORD 584 (1991).

The more prudent course of action would have been for the Department to notify Dominguez that it withheld the documents under an exception to the Act and in reliance on a previous determination.[4] However, the Act does not contemplate the automatic disclosure of information as a sanction for the Department's failure to do so. The issue before us is whether the information qualifies for an exception under the Act.

Information is excepted from disclosure under the Act "if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision." Tex. Gov't Code Ann. § 552.101. A governmental body can voluntarily disclose records that it is not required to disclose *unless* those records are "confidential under law." *Id.* § 552.007(a) (West Supp. 2001).

Federal law requires that state Medicaid plans provide safeguards restricting the disclosure of information concerning applicants and recipients to "purposes *directly connected* with the administration of the plan." 42 U.S.C.A. § 1396a(a)(7) (West Supp.2000) (emphasis added). Purposes directly connected with the administration of a state Medicaid plan include establishing eligibility, determining the amount of medical assistance, providing services, and conducting an investigation related to administration of the plan. 42 C.F.R.

---

3. The 76th Legislature added subsection (d) to section 552.301, effective September 1, 1999. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1231, § 5, 1997 Tex. Gen. Laws 4701, *amended by* Act of May 23, 1999, 76th Leg., R.S., ch. 1319, § 20, 1999 Tex. Gen. Laws 4508, 4509. That subsection requires the governmental body to notify the requesting party within ten business days that an Attorney General's determination has been sought. Tex. Gov't Code Ann. § 552.301(d) (West Supp.2001).

4. For example, in *Rainbow Group Ltd.*, the Texas Employment Commission, relying on several previously issued Attorney General's opinions, refused to disclose certain information requested under the Act. *See Rainbow Group, Ltd. v. Tex. Employment Comm'n*, 897 S.W.2d 946, 948 (Tex.App.—Austin 1995, writ denied). The Commission notified the requestor that the information sought was confidential under the Texas Unemployment Compensation Act and would not be disclosed. *Id.*

**794**

§ 431.302 (2000). At a minimum, safeguarded information must include names, addresses, medical services provided, social and economic circumstances, agency evaluations of personal information, medical data, income eligibility, and the amount of medical assistance payments. *Id.* § 431.305.

In Texas, the Medicaid program is administered by the Department. Tex. Hum. Res.Code Ann. § 32.021(a) (West Supp.2001). State law dictates that it is a misdemeanor for a person to disclose "any information" concerning Medicaid applicants and recipients "if the information is directly or indirectly derived from the records, papers, files, or communications" of the Department or acquired by Department employees in the performance of their official duties. *Id.* § 12.003(a) (West 2001). The legislature has directed the Department to establish safeguards restricting the disclosure of information concerning Medicaid applicants and recipients to "purposes *directly connected* with the administration" of Department programs. *Id.* § 21.012(a) (emphasis added). The Attorney General has determined that information regarding Medicaid clients is excepted from disclosure under the Act as "information deemed confidential by statutory law." *See* Tex. Att'y Gen. ORD 584 (interpreting sections 12.003 and 21.012 of Texas Human Resources Code and predecessor to 42 U.S.C.A. § 1396a(a)(7)).

■ On appeal, Dominguez and the Department disagree regarding the contents of the disputed documents. Following its *in camera* review of those documents, the trial court made a finding that the withheld and redacted information pertained only to Medicaid recipients. This was the basis for the court's conclusion that the information was confidential under federal and state law and thus could not be disclosed. However, the pages inspected *in camera* were not submitted with the record on appeal. This court requested the documents under seal from the clerk of the trial court, only to learn that they were not of record. Apparently, they were sent to the trial court judge via hand delivery, under cover letter, without a request that the documents be filed or entered as evidence.[5] We must determine a case on the record as filed. *Mitchison v. Houston Indep. Sch. Dist.,* 803 S.W.2d 769, 771 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Therefore, even if the Department could reproduce the documents, we cannot examine them.

■ The appellant usually bears the burden of presenting a trial court record that is sufficient to show reversible error. *See* Tex.R.App. P. 34.6(b); *see also Piotrowski v. Minns,* 873 S.W.2d 368, 370 (Tex.1993) ("The duty to protect the record does not spring into being only at the conclusion of trial, when the appellant begins the steps to perfect an appeal."). However, there are exceptions to this general rule. For example, when the court reporter's notes are lost or destroyed through no fault of the appellant, he may be entitled to a new trial. Tex.R.App. P. 34.6(f); *see also Piotrowski,* 873 S.W.2d at 370. In this instance, where Dominguez had no access to the documents and they were not offered in open court, the burden to preserve them of record for appellate review must lie with the Department.

■ This case presents a dispute analogous to a discovery dispute, in which a party seeks to avoid producing allegedly

---

**5.** Furthermore, the Honorable Ernest Garcia, who conducted the *in camera* inspection, is no longer on the bench.

privileged documents. The Texas Supreme Court has stated, as follows:

> Only in certain narrow circumstances is it appropriate to obstruct the search for truth by denying discovery. Very limited exceptions to the strongly preferred policy of openness are recognized in our state procedural rules and statutes. The burden is on the party seeking to avoid discovery to plead the basis for exemption or immunity and to produce evidence supporting that claim.... If the trial court determines that an *in camera* inspection of the requested discovery is necessary, the materials must be segregated and produced to the court.

*State v. Lowry,* 802 S.W.2d 669, 671 (Tex. 1991) (citations omitted). Furthermore, "[i]n the absence of any additional evidence to support the claimed privilege, [the appellate] court must review the documents themselves to determine if they clearly support the privilege as a matter of law." *Barnes v. Whittington,* 751 S.W.2d 493, 495 (Tex.1988) (citations omitted); *see also In re Monsanto Co.,* 998 S.W.2d 917, 929 (Tex.App.—Waco 1999, no pet.); *Oyster Creek Fin. Corp. v. Richwood Invs. II,* 957 S.W.2d 640, 646–47 (Tex.App.—Amarillo 1997, pet. denied); *Osborne v. Johnson,* 954 S.W.2d 180, 185 (Tex.App.-Waco 1997, no pet.).

■ It is the policy of the State to construe the Public Information Act liberally in favor of disclosure. Tex. Gov't Code Ann. § 552.001(b). If the trial court determines that an *in camera* inspection is necessary, the material must be segregated and produced for the court. Thus, the burden to produce the disputed information, and to preserve it of record for the appeal, lies with the governmental body seeking to assert an exception to the Act. The Department has failed to carry this burden. On this record it is impossible for us to determine whether the withheld documents contain *only* confidential information pertaining to Medicaid patients. Therefore, we reverse the order denying Dominguez's writ of mandamus and remand to the trial court for further proceedings in which the documents can be filed under seal and inspected *in camera* once more. In the event of another appeal, the complete record will be available for our review.

### Litigation Costs and Attorneys' Fees

■ Dominguez asserts that the trial court had no discretion to deny his request for litigation costs and attorneys' fees. To the contrary, under the version of the Act governing this case, it is in the discretion of the trial court to award costs and fees incurred by the party who substantially prevails.[6] Act of April 30,1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 606 (amended 1999) (current version at Tex. Gov't Code Ann. § 552.323 (West Supp.2001)). One factor for the court to consider is whether the governmental body had a reasonable basis for its actions. *Id.* However, in light of the disposition of this appeal, the issue of costs and fees is not yet ripe for our review.

6. Prior to the 1999 amendments, the Act read:
   (a) In an action brought under Section 552.321 or Section 552.353(b)(3), the court *may assess* costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails.
   (b) In exercising *its discretion under this section,* the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith.
   Act of April 30,1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 606 (amended 1999) (current version at Tex. Gov't Code Ann. § 552.323 (West Supp.2001)) (emphasis added).

**796**

### DISPOSITION

In the trial court, Dominguez filed a petition for writ of mandamus. This is the statutory remedy provided to private citizens by the Act. Act of May 19, 1995, 74th Leg., R.S., ch. 1035, § 24, 1995 Tex. Gen. Laws 5127, 5140 (amended 1999) (current version at Tex. Gov't Code Ann. § 552.321 (West Supp.2001)). Concurrently, Dominguez sought a declaratory judgment that, among other things, the withheld information should be made available to the public as a matter of law. In response, the Department filed a plea to the jurisdiction. Relying on the 1999 amendments to the Act, the Department argued that the Act explicitly waived the State's sovereign immunity from suit by private citizens *only* for suit for writ of mandamus. *See* Tex. Gov't Code Ann. §§ 552.321, .3215 (West Supp.2001). The 1999 amendments added section 552.3215, which provides that actions for declaratory judgment may be brought by a district attorney, county attorney, or the Attorney General. *See* Tex. Gov't Code Ann. § 552.3215(c). That section does not provide for declaratory actions maintained by requestors. Following the hearing and *in camera* inspection, the trial court issued an order granting the Department's plea. The trial court stated in its conclusions of law that Dominguez was not a party that could properly seek a declaratory judgment under the Act and that his sole remedy was mandamus. However, as previously noted, the 1999 amendments do not govern this appeal.

 "The Declaratory Judgments Act gives courts the power to declare rights, status and other legal relations, whether further relief is claimed or could be claimed." *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000) (applying Act in effect in September 1993). Under earlier versions of the Act, "both requestors and governmental bodies have brought declaratory judgment actions in open records cases since the Act's inception." *Id.* Historically, requestors could sue for declaratory judgment *in addition* to mandamus. *Id.* We express no opinion as to whether the 1999 amendments to the Act changed the law in this regard.

 Therefore, we reverse the trial court's order granting the Department's plea to the jurisdiction and render judgment that Dominguez has standing to seek a declaratory judgment. We further reverse the trial court's order denying Dominguez's petition for writ of mandamus and remand for further proceedings.